KANSAS PACIFIC RAILWAY CO. *v.* ROBERSON.

In the absence of proof of custom or usage to the contrary, a general hiring cannot be regarded as a contract for a year's service. The English rule in this regard is not recognized by American decisions.

*Appeal from District Court of Arapahoe County.*

THIS was an action commenced by Roberson, the appellee, against the Kansas Pacific Railway Company, the ap-

pellant, to recover $3,000, alleged to be due from the company to Roberson, as its agent on the Pacific coast. The declaration alleged that the company, in consideration of Roberson becoming its agent at a salary of $3,000 per annum, undertook to employ him in that capacity for a year from October 1st, 1870; that Roberson accepted the employment on those terms and continued in the employment until March 1st, 1871, and averred that he had been willing and offered to continue his services for the period of one year, but that the company refused to permit him to continue in said employment; that he was discharged, etc. The common counts were added and the plea of the general issue interposed. The cause was tried by the court, and Roberson recovered judgment for $912.94.

Upon the trial it appeared that David H. Moffat was in San Francisco, in the summer of 1870; that he received a telegram from Mr. Perry, president of the Kansas Pacific Railway Company, asking witness to look out for a suitable person for agent of the company; that witness telegraphed back recommending Roberson; that after witness returned to Denver, he telegraphed Roberson, at the instance of an officer of the company, asking what salary he would require; that Roberson replied, $3,000 per annum; that on the 20th of September, 1870, Roberson received a telegram from the general superintendent of the company as follows: "Will engage you to commence October 1st; the general ticket agent, R. B. Grinnell, will send you instructions by that date"; that Roberson subsequently received a letter from Grinnell, setting out the duties to be performed by Roberson as general agent; that in February, 1871, Roberson received a letter from Beverly R. Keim, general ticket agent of the company, stating that the company had concluded to discontinue the San Francisco office after March 1st, 1871. There was some further correspondence between Roberson and officers of the company, concerning his discharge. It appears that Roberson had received from the company $1,250, for five months' service, and that

after March 1st, 1871, he had worked for other parties at a compensation of $150 per month, until October 1st, 1871. It does not appear from the evidence that in Roberson's correspondence with any of the officers of the company, any period of service was fixed, but that he was employed as were other employees, so long as they gave satisfaction or their services were required, and that Roberson's services were no longer required by the company.

Messrs. SAYRE, WRIGHT & BUTLER, for appellant.

Mr. BELA M. HUGHES, for appellee.

HALLETT, C. J.    Whether appellee was employed for one year or for a shorter time is the principal question presented in this record, and upon that, we think the judgment of the district court cannot be supported.

At the interview between Moffat and appellee in San Francisco, nothing was said about the terms of the employment, and the correspondence by telegraph, after Moffat returned to Denver, appears to have been directed to the matter of compensation to be paid to appellee, and not to the term of service.

Moffat testifies that an officer of the company wanted to know from him what appellee would ask for taking the place, and thereupon he inquired by telegraph: "What slary will you ask for Kansas appointment?" To this appellee answered: "Three thousand dollars per annum." Assuming that Moffat had authority from the company to make the inquiry, it was, in itself, an inquiry as to price, and not as to the term of service. It is quite certain that the officers of the company were not thinking of the term of service, for there was nothing in the question which they asked of Moffat, nor in the telegram sent to appellee by Moffat on that subject. Upon this it would seem that the answer ought not to be carried beyond the scope of the question, unless there is something in it which manifestly conveys a larger meaning. In ordinary intercourse, an

answer to a question will be taken for what it purports to be, rather than in any recondite sense which may, upon careful scrutiny, be found in it. Referring to the answer of appellee to Moffat's telegram, we find that it may be understood as fixing the *rate* of compensation, and if received by appellant, it probably was so understood. It is not denied that under some circumstances, such language may also refer to the term of service, as for instance, where the parties have previously discussed the subject, or there are other circumstances showing that the parties intended to make time a matter of stipulation. *Franklin Mining Co.* v. *Harris*, 24 Mich. 115, is a case in which it appeared, from the acts and declarations of the parties, that they intended to engage for a year, and an agreement to pay a certain sum *per annum* concurred to establish such a contract. But the case at bar is different, for the reply was in answer to a specific question concerning the price to be paid to appellee, and it may be, and probably was, understood as referring only to the rate of compensation. In support of this view we have the practical construction of the contract by the parties, which, in a doubtful case, is entitled to weight.

After entering upon the service, the salary was paid monthly and received by appellee apparently without objection, and this does not accord with the notion that he was working for a gross sum payable at the end of the year.

If, as contended, the telegrams show a yearly hiring, there was no stipulation for monthly payments and nothing would have been due until the contract was fully performed by appellee. *Stark* v. *Palmer*, 2 Pick. 267; *Olmstead* v. *Beale*, 19 id. 528.

If now we advert to the situation of the parties, which is also a circumstance to be considered, where the intention is not clearly expressed, we find nothing to support the theory that the contract was to continue for a year. Appellant was about to open an office in a distant city for the purpose of selling tickets and securing traffic over its

road, and whether it would be profitable to maintain the office, could not then be known. An intention to keep the office open for a definite time was not expressed, and it is not reasonable to suppose that appellant intended to do so if it should result in loss. *Baxter* v. *Nurse*, 6 M. & G. 934. In all that took place between the parties and the circumstances under which they acted, there is nothing to show a contract for a year, unless it can be inferred from the answer of appellee to Moffat's telegram, and that, we think, cannot be done.

If appellee understood that he was contracting for a year's service, it was not sufficiently shown that appellee so understood the agreement, and unless both parties concurred in that understanding, the contract cannot extend so far.

As to the English rule that a general hiring shall be taken to be a hiring for a year (2 Chitty's Cont. 841), we have not found any American case which recognizes it, and we think it has not been adopted in this country. In England, the rule stands on custom and usage, and it is not contended that any such usage prevails in this country (2 Pars. on Cont. 32–33 n). But if any such custom obtains, as to any class of servants, it would certainly be competent to prove it as entering into and forming a part of the contract of hiring, and when that is done, we may have the English rule or something like it.

In the case at bar, no usage or custom was shown respecting the employment of agents by railroad companies, and without it a general hiring cannot be regarded as a contract for a year's service.

The judgment of the district court is reversed with costs, and the case is remanded.

*Reversed.*