James **MIEDEMA**, Plaintiff,

v.

**BROWNING–FERRIS INDUSTRIES OF COLORADO, INC.,** Defendant.

No. 88–C–1034.

United States District Court,
D. Colorado.

July 31, 1989.

Glenn A. Bergmann, Lakewood, Colo., for plaintiff.

John N. McNamara, Jr., Baker & Hostetler, Denver, Colo., for defendant.

**MEMORANDUM OPINION
AND ORDER**

CARRIGAN, District Judge.

Plaintiff James Miedema has filed this diversity suit against his former employer,

the defendant Browning–Ferris Industries of Colorado, asserting a single claim for wrongful discharge. Plaintiff contends that his employment was wrongfully terminated in contravention of public policy, that is, in retaliation for his pursuit of a course of action statutorily mandated by the Colorado Worker's Compensation Act, Colo. Rev.Stat. §§ 8–40–101 *et seq.*

Defendant has moved for summary judgment on the following grounds: (1) that the Colorado Worker's Compensation Act provides the plaintiff's sole remedy; (2) that the plaintiff's wrongful discharge claim is precluded because his firing occurred prior to his worker's compensation claim application; and (3) the plaintiff cannot establish causation between his discharge and his worker's compensation claim. Plaintiff has responded by opposing the motion.

The parties have fully briefed the issues and oral argument would not materially assist my decision. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

### I. *Factual Discussion.*

Plaintiff commenced his employment with the defendant as a "swing driver" in November 1975. As a "swing driver," he was familiar with the defendant's waste collection routes and filled in for other drivers on an emergency basis. Plaintiff, an experienced driver, thus was "on call." His occupation required rigorous physical activity.

In mid–1981, the plaintiff's supervisor, David L. Ohlmacher, terminated the plaintiff's employment because he failed to report to work. However, the defendant rehired the plaintiff in the fall of 1983. On December 31, 1983, the plaintiff was seriously injured while on duty when he was crushed between a dumpster and a garbage truck. He received medical treatment for his injuries at the defendant's expense. Defendant maintained the plaintiff on the payroll during his recovery period. Plaintiff asserts that he was required to perform training and customer contact duties, and that he was further required to ride in a truck with another driver. Plaintiff contends that, as a result of his injuries, he continued to be disabled in varying degrees throughout the following months and years.

The facts are somewhat unclear on whether the plaintiff sustained a new injury in May 1986. Plaintiff alleges that in May 1986, while on duty, his right leg was dislocated from the hip joint. He states in an affidavit that on June 18, 1986 he advised his supervisor, Ohlmacher, and the defendant's safety director, one Elms, that he could not straighten his back or step up or down with his right leg. Plaintiff further states that on June 19, 1986, he asked to take the next day off to go to the doctor, but Ohlmacher refused. Instead, Ohlmacher made a doctor's appointment for the plaintiff on a date three weeks later, and insisted that the plaintiff work on June 20, 1986, which he did.

According to the plaintiff, his condition became worse over the weekend. Plaintiff called "the office" at 4:40 a.m. on Monday morning (June 23, 1986) and advised Bob Pierce that he could not get out of bed. Plaintiff admits that he did not call Ohlmacher. However, Ohlmacher contacted the plaintiff during the week concerning the plaintiff's medical condition and advised that someone from the office would call on him to give him (the plaintiff) insurance information. However, no one called on the plaintiff. Plaintiff states that he went to the office on Thursday, June 26, 1986, and at that time was advised by Ohlmacher that he was fired.

Defendant states a different version of the facts. Defendant asserts that on June 19, 1986, the plaintiff complained to Ohlmacher, his supervisor, of a nagging back and leg injury, and asked to take the following day off to see a chiropractor. Ohlmacher states in an affidavit that he approved the leave time, but advised the plaintiff that he might have to cancel the appointment if a work emergency arose. Plaintiff was required to fill in for another driver on June 20, but Ohlmacher further states that the plaintiff did not complain about needing to see the chiropractor that particular day. *See* Ohlmacher's affidavit.

According to the defendant, the plaintiff did not return to work until Monday, June

30, 1986. Defendant further contends that the plaintiff did not telephone Ohlmacher or any of the defendant's other employees to report the reason for his absence. On June 25, 1986, Ohlmacher decided to terminate the plaintiff's employment because of his failure to report to work. When the plaintiff reported on June 30, Ohlmacher refused to reinstate him to his job.

In his deposition, the plaintiff stated the following regarding his understanding as to the reason for his employment termination:

"Q. Why do you say you were fired?

A. I was fired because I was hurt.

Q. And you've testified that you first exercised your rights or started the procedure with worker's comp about a week after you were fired?

A. Yes. The exact dates, I'm not sure of, but it had to be that time before I realized what was going on.

Q. Okay. But there is no doubt in your mind that this occurred with worker's comp after you were fired?

A. Yeah.

Q. Okay. So your testimony is, then, I take it, that you were fired because you were hurt?

A. Yeah.

Q. Not necessarily that you were trying to exercise your rights under worker's comp, correct?

A. Yes."

Plaintiff's deposition, p. 55, lines 2–17, dated October 19, 1988.

Neither party disputes that the plaintiff filed an application for worker's compensation benefits on July 8, 1986, claiming a permanent disability. On August 26, 1986, a hearing was held on the plaintiff's request for temporary disability and medical benefits. An order was issued November 17, 1986, requiring the defendant to pay (a) temporary total disability benefits for June 28, 1986 through August 31, 1986, and continuing from December 20, 1986 until further order; (b) temporary partial disability benefits from September 1, 1986 through December 19, 1986; and (c) benefits for medical treatments. Defendant has contested these awards on appeal.

At the time of the plaintiff's employment termination, he had been promoted to a supervisory level and was earning in excess of $45,000 annually. Plaintiff filed the instant lawsuit on June 30, 1988.

II. *Legal Discussion and Conclusion.*

Plaintiff sets forth his claim for relief in the complaint as follows:

"8. Plaintiff was terminated from his job on June 26, 1986 for seeking medical treatment for continuing debilitating complications growing out of his original injury. Plaintiff was advised by a supervisory representative of the Defendant, Mr. Olmacher [Ohlmacher], that plaintiff would have to pay his own medical expenses, and that he (Plaintiff) was terminated."

"9. Plaintiff alleges that he was wrongfully terminated by the Defendant in contravention [of] an important public policy recognized in Colorado. That policy being, that an employee may not be discharged for pursuing mandated course of action. In this case, 1973 C.R.S. 8–40–101, et sequa, the 'Workmen's Compensation Act of Colorado.'" Complaint at paras. 8 and 9.

■ In Colorado, a plaintiff may maintain a claim for relief against his employer for wrongful discharge from employment in limited circumstances. These limited circumstances include an employee's discharge for exercising a specific statutory right or duty, such as the right to file for worker's compensation or the duty to serve on a jury. *Brooks v. Trans World Airlines, Inc.,* 574 F.Supp. 805, 809 (10th Cir. 1983). *See also, Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978) and *Corbin v. Sinclair Mktg., Inc.,* 684 P.2d 265 (Colo.App.1984). Recently, the Colorado Court of Appeals held that a plaintiff who alleges that he or she was constructively discharged in retaliation for filing a worker's compensation claim states a valid claim for relief. *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App. 1989). A claim for retaliatory discharge, therefore, based on the employee's filing

for worker's compensation benefits is actionable in Colorado.

■ In the instant case, the plaintiff was fired on June 26, 1986 and filed for worker's compensation benefits on July 8, 1986. Defendant contends that the plaintiff's claim must be dismissed because the plaintiff's discharge occurred before he filed for worker's compensation benefits, and because there is no evidence that these two events are causally connected. In response, the plaintiff asserts that his claim is not based merely on his filing for benefits, but also on his right to seek medical assistance for a work related injury.

Apparently no Colorado case has dealt directly with this narrow issue. However, in *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909 (1988), the Illinois Supreme Court determined that the employee's right to seek medical care is embodied in the public policy underlying the workers' compensation laws. Under that rationale, it is unnecessary for the application for benefits to predate the employee's termination. In *Hinthorn, supra*, the Illinois Supreme Court stated:

"Defendant contends that no such policy has been violated by the discharge in this case because the policy underlying workers' compensation—the statutory enactment under which plaintiff claims a clear mandate of policy has been violated—protects only a worker's right to *compensation* for work-related injuries, not to medical attention itself. Such a construction of the policy underlying the Workers' Compensation Act is too narrow to be acceptable."

\* \* \* \* \* \*

"The defendant obviously confuses the procedural means by which remedies are provided to employees under workers' compensation with the fundamental policy upon which the Act rests. Payment of compensation to employees for their work-related medical bills is only the means by which the State ensures that employees will receive medical attention for their on-the-job injuries. The Act clearly states that it is the employer's responsibility to both 'provide and pay for' all necessary medical attention. (Ill. Rev.Stat.1985, ch. 48, par. 138.8). Requesting and seeking medical attention, as the plaintiff in this case did, is only the crucial first step in exercising rights under the Workers' Compensation Act. Given that plaintiff had filed workers' compensation claims for both of her previous work injuries, it is reasonable to assume she would have done likewise in this situation. It would be anomalous to allow a retaliatory discharge action to employees who are fired after filing a workers' compensation claim for work-related injuries, but not [to] those who are injured and fired before they ever get the chance to file such claims. Plaintiff should not be penalized because her employer discharged her in retaliation for orally requesting medical attention, instead of filing a formal compensation claim—the effect is the same: being fired in retaliation for asserting legal rights to medical care for work-related injuries." *Id.* at 913.

In *Zaragosa v. Oneok, Inc.*, 700 P.2d 662 (Okla.App.1984), the plaintiff complained to her employer that she had suffered a back injury on the job and presented a doctor's statement that she should be on sick leave for seven days. Her supervisor arranged for the plaintiff to be examined by another doctor. The doctor who conducted the second examination determined that the plaintiff was able to work and that no further medical treatment was necessary. When the plaintiff refused to return to work, she was fired. Plaintiff filed a worker's compensation claim six days after her employment termination. The Oklahoma Court of Appeals determined that her claim for retaliatory discharge should not be dismissed on summary judgment because reasonable persons could disagree on the reason for her discharge. Both *Hinthorn* and *Zaragosa* indicate that a retaliatory discharge claim can be asserted based on facts of an employee's discharge before the employee has filed for worker's compensation benefits.

The Colorado cases cited earlier establish a clear recognition of claims for wrongful discharge in violation of statutory public policy or duty, including the pursuit of worker's compensation benefits. Given the present state of Colorado law, I conclude that this kind of wrongful discharge claim extends to situations in which the plaintiff has been fired in retaliation for seeking medical assistance before filing a worker's compensation claim.

Based on my review of the briefs and documents presented by the parties, I find and conclude that a genuine issue of material fact exists regarding the reasons for the plaintiff's employment termination. Certainly, the issue of causation must be determined by the fact finder.

Defendant last contends that the plaintiff's retaliatory discharge claim is preempted by the Colorado Worker's Compensation Act. I disagree. Again, the Colorado cases cited earlier recognize that a retaliatory discharge claim based on retaliation for the employee's filing for benefits is actionable. Having recognized the claim, it would be illogical to then hold that the action is barred on the ground that the Worker's Compensation Act provides the plaintiff's exclusive remedy.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Because of the factual dispute in this case, the defendant's motion for summary judgment is denied.

Accordingly, it is ORDERED that:

(1) Defendant's motion for summary judgment is denied; and

(2) Within eleven days of this order, the parties and their counsel are ordered to meet and confer in a good faith effort to settle this lawsuit. Counsel shall report in writing to the court within twenty days regarding their settlement efforts, progress and results, and shall state whether a settlement conference before a magistrate or some form of alternate dispute resolution would facilitate concluding this matter without further expense and delay.