J. Bradley **ANDERSON** and Martie Lynn Anderson, Plaintiffs,

v.

**ROYAL CREST DAIRY, INC.,**
a Colorado corporation,
Defendant.

No. CIV.A.01–K–2096.

United States District Court,
D. Colorado.

March 17, 2003.

Ronald E. Gregson, Gregson and Pixler, P.C., Denver, CO, for plaintiffs.

Melody Rae Divine, Burns, Figa & Will, P.C., Englewood, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff Bradley Anderson suffered a back injury on the job and was terminated from his employment with Defendant Royal Crest Dairy ("Royal Crest") when he could not return to work four months later. His termination, however, occurred twelve days after he hired an attorney to process his worker's compensation claim and Anderson claims it was retaliatory. Anderson's termination, moreover, resulted in the cancellation of his employer-funded health insurance benefits and, for a period of five weeks before those benefits could be reinstated under COBRA,[1]

---

1. The Consolidated Omnibus Budget Act, 29 U.S.C. §§ 1161–1168 (COBRA) was enacted

Anderson's wife, who suffered from multiple sclerosis, could not fill numerous prescriptions or undergo necessary tests and monitoring for her treatment. The Andersons filed suit, asserting a federal claim for COBRA notice violations in addition to a state law claim for wrongful termination.

The matter is before me on a series of piecemeal Motions for Partial Summary Judgment and for Dismissal of Claims filed by Defendant Royal Crest. The gist of Defendant's Motions are that (1) Royal Crest is entitled to summary judgment on both the ERISA/COBRA claim and the claim for wrongful termination or (2) in the alternative, that Anderson's wrongful termination claim should be dismissed "to the extent it is premised on the averment that Anderson was terminated for hiring an attorney," on grounds Colorado law does not recognize such a cause of action. I grant the Motions with respect to the COBRA/ERISA claim, but deny them on the claim for wrongful termination.

## I. *Background.*

Plaintiffs Bradley and Martie Anderson are citizens of the United States and reside in Elbert County, Colorado. Defendant Royal Crest is a Colorado corporation doing business in the City and County of Denver. Royal Crest hired Mr. Anderson as a route delivery driver on July 8, 1996.

In the early morning hours of November 1, 2000, Mr. Anderson injured his back while loading his truck. He was 35 years old at the time. Anderson immediately notified Royal Crest, returned his truck to the dairy and completed an injury report. Anderson notified Royal Crest's Risk Manager Asa Ratliff, who instructed him to go home and "use simple remedies, ice, stretches, things of that nature, before ac-

tually filing a comp claim." (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA) Ex. 2, Ratliff Dep. at 5.) Ratliff also completed a workers' compensation report. (Def.'s Mot. Partial Summary J.(Wrongful Termination) Ex. B, Employer's First Report of Injury dated Nov. 8, 2000.)

Anderson was referred to Royal Crest's workers' compensation physicians' group later that same day, and was seen by Dr. Clarence Henke of the Rocky Mountain Medical Group. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. A, Anderson Dep. at 15.) Dr. Henke diagnosed Mr. Anderson with a "strained/sprained lumbar" with a "locked facette" and prescribed medications and physical therapy. (Compl.¶ 9.) On November 15, 2001, the workers' compensation insurance carrier admitted liability for temporary total disability benefits at a rate of $410.00 per week. (Def.'s Mot. Partial Summ. J.(Wrongful Termination) Ex. C, General Admission of Liability.) As a result of his injury, Anderson was completely unable to work for the months of November, December and part of January. During this time Anderson continued to undergo treatment—which included selective nerve root blocks, a general lumbar translaminar epidural and physical therapy—and substantial medication for his pain. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. D, Dr. Lockwood Evaluation dated Jan. 11, 2001.)

In mid-January, Anderson was released for light duty/sedentary work 3–4 hours per day. He returned to work on January 15, 2001, but experienced severe back pain and cramping. He was excused from work for another week on January 16.

to ensure the continuing coverage of employee health insurance benefits under certain circumstances under the Employee Retirement Income Security Act, 29 U.S.C. § 1132

(ERISA). Any failure to comply with COBRA notice provisions constitutes a violation of ERISA. (cite)

Anderson saw Dr. Lockwood for a followup visit on January 25, 2001. Dr. Lockwood expressed concern that the injections and nerve blocks were not relieving Anderson's pain (noting one, in fact, seemed to exacerbate it) and discussed with Anderson the options of other pain management paradigms or surgical intervention. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex J, Dr. Lockwood Evaluation.) Dr. Lockwood expressed a desire that Anderson continue in a work environment, however, stating Anderson could work in a sedentary capacity for three hours a day. (*Id.*) Anderson did not, however, return to work.

On February 16, 2001, Anderson retained an attorney to process his workers' compensation claim. On February 20, 2001, attorney Peter H. McGuire entered his appearance with the Division of Workers Compensation and wrote to Royal Crest, enclosing a release signed by Mr. Anderson. On February 22, 2001, Ratliff faxed the letter to Chad Saunders, Claims Adjuster with Liberty Mutual, in order to inform the workers' compensation insurance carrier that Mr. Anderson had retained counsel. The next day, February 23, 2001, Ratliff telephoned Anderson and told him that he would be receiving termination papers. (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA) Ex. 2, Ratliff Dep. at 19–20.) According to Anderson, Ratliff was upset and yelled at him on the telephone for retaining counsel. Ratliff confirmed his feelings were "hurt" and "upset" that Anderson had retained an attorney. (Ratliff Dep. at 18–19.) Citing conversations with both Anderson and his treating doctors, Ratliff in a letter dated February 28, 2001, stated it was "apparent" Anderson would not be able to return to his "full duties as a route delivery person" and notified Anderson of the company's decision to terminate his employment. (*Id.* Ex. L, Letter from Ratliff to Anderson.) Ratliff further asked that "Anderson reimburse Royal Crest for Insurance and dental coverage's [sic] for the months of December 2000, January 2001 and February 2001." *Id.*

At the time of Mr. Anderson's termination, Royal Crest was aware that Martie Anderson suffered from multiple sclerosis and depended on her husband's employee health insurance for her treatment and care. (Ratliff Dep. at 36.) According to Royal Crest, Mr. Anderson's termination constituted a "qualifying event" that resulted in a cancellation of his health insurance. The Andersons did not discover the cancellation, however, until March 13, 2001, when they attempted to refill Mrs. Anderson's prescriptions and were told by the pharmacist that she no longer had insurance coverage. (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA), Martie Anderson Aff. ¶ 4.) Mrs. Anderson immediately contacted Royal Crest's benefits manager, Keith Gaertner, explaining that she had been unable to fill necessary prescriptions and begging him to reinstate the insurance. (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA), Gaertner Dep. at 14.) Gaertner could detect urgency in Mrs. Anderson's voice and assumed this was due to her multiple sclerosis. (*Id.* at 15.) Mrs. Anderson telephoned Gaertner several times over the next few days, explaining the urgency of her receiving needed tests and asking when she and her husband could anticipate receiving a Notice of Continuing Coverage, i.e. COBRA, letter from Royal Crest. (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA), Martie Anderson Aff. ¶ 7–8.) Gaertner assured Mrs. Anderson that the notice of continued coverage would be coming from COBRA compliance and agreed to call to find out the status of the letter. (Gaertner Dep. at 16.)

In fact, Gaertner had sent the Qualifying Event Form to COBRA Compliance Sys-

tems, Inc. ("CCS"), Royal Crest's off-site service provider, the same day he received Mrs. Anderson's first panicked call, March 13, 2001. (Def.'s Mtn Partial Summ. J. (ERISA) Ex. C, Qualifying Event Form.) CCS sent the Andersons their Notice of Continuing Coverage thirty days later on March 26, 2001, and the Andersons returned the election form on April 1, 2001. (*Id.* Ex. F, COBRA Continuation Coverage Election Form.) The Andersons' insurance coverage was reinstated April 4, 2001, and made retroactive to February 28, 2001. (*Id.* Ex. G, COBRA Continuee Form.) From the time their insurance was cancelled on February 28, 2001 until its reinstatement on April 4, 2001, Mrs. Anderson was unable either to fill her prescriptions or to undergo necessary medical tests such as an MRI, catscan and blood tests necessary for the monitoring and treatment of her multiple sclerosis. (Martie Anderson Aff. ¶ 7–10.)

CCS is a service company designed to assist employers with COBRA administration and compliance. The services CCS provides include writing COBRA notices, sending the notices, receiving elections from qualified beneficiaries, sending CO-BRA billing statements, and adjudicating COBRA premiums. Royal Crest has contracted with CCS since January 29, 1998. Under the contract, Royal Crest is the employer and plan administrator and CCS is the off-site service provider for Royal Crest. As the off-site service provider, CCS is required to accomplish and perform the duties and responsibilities stated in 29 U.S.C. § 1161, *et seq.*, including providing requisite notification to employees on behalf of Royal Crest.

After Mr. Anderson's termination, the Andersons' attorney wrote a letter to Royal Crest requesting the company reconsider its position with respect to Mr. Anderson's employment. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. M, Letter from McGuire to Ratliff dated March 6, 2001.) McGuire asked Royal Crest to wait until Mr. Anderson was placed at maximum medical improvement before it decided whether or not to terminate his position. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. M, Letter from McGuire to Ratliff dated March 6, 2001.) In response to McGuire's request, Ratliff stated Royal Crest would reconsider Mr. Anderson's return to Royal Crest if Mr. Anderson provided medical documentation verifying he could return to work. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. N, Letter from Ratliff to McGuire dated March 14, 2001.)

In a letter dated June 13, 2001, Ratliff restated that Royal Crest would consider rehiring Mr. Anderson if he provided medical documentation demonstrating he could do so. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. P, Letter from Ratliff to Attorney Gregson dated June 13, 2001, *see also* Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. H, Workman's Compensation Follow Up Log.) Although Dr. Henke completed a supplemental physician's workers' compensation report on March 15, 2001, stating Anderson could return to restricted duty (sitting/sedentary work only) as of that day (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. O, Rocky Mountain Medical Group Physician's Supplemental Report), Anderson never provided Royal Crest with any medical documentation showing he could return to work. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. A, Anderson Dep. at 96–97, 102–103.) In his deposition, Anderson explained that he failed to provide any medical documentation during that time period because he was without insurance and could not afford to pay for a doctor's visit out of his own pocket. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. A,

Anderson Dep. at 96–97, 102–103.)[2] Anderson claims he still had not reached maximum medical improvement and believes to this day that he cannot return to work due to the injuries he suffered on November 1, 2000. (Def.'s Mot. Partial Summ. J. (Wrongful Termination) Ex. A, Anderson Dep. at 20, 62.)

Royal Crest moves for summary judgment on the Andersons' first claim for relief for violating COBRA notification requirements under ERISA, arguing it complied with COBRA by providing notification to the Andersons within 26 days of the qualifying event. Royal Crest argues CCS is the administrator for purposes of COBRA, and thus under 29 U.S.C. § 1166, the proper notice period for continued coverage is 44 days.[3] In the alternative, Royal Crest argues that if the court should conclude it is the administrator and not CCS, as employer and administrator Royal Crest was still entitled to 44 days to provide continuation notification to covered employees and qualified beneficiaries under 29 U.S.C. § 1166.

With respect to Mr. Anderson's second claim for relief for wrongful termination, Royal Crest filed its Motion for Partial Summary Judgment and Motion to Dismiss on the same day. In the former, Royal Crest denies Anderson was terminated for any reason other than his inability, or unwillingness, to return to work and contends Anderson has failed to create a genuine factual dispute that he was termi-

nated in retaliation for having been injured and seeking workers' compensation benefits. To the extent Anderson's wrongful termination claim is premised on the averment that he was terminated for hiring Mr. Maguire, Royal Crest moves to dismiss that claim, arguing Colorado law does not recognize an exception to the principle of "at will" employment for such a termination.

### III. *Standard of Review*

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Pleadings and documentary evidence must be construed in favor of the non-moving party. *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793 (10th Cir.1993). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such a showing, the burden shifts to the non-moving party. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The non-moving party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue. F.R. Civ. P. 56(e);

---

**2.** It should be noted that Dr. Henke's evaluations were completed as part of Anderson's worker's compensation claim the behest of Royal Crest's workers' compensation insurance carrier. Dr. Henke was not Mr. Anderson's treating physician. The Supplemental Report (a preprinted form) in which the worker's compensation physician checks off boxes corresponding to his recommended work limitations and restrictions and sets forth. In addition, I note the March 15 evalua-

tion was completed over the course of 50 minutes.

**3.** An employer of an employee under a plan shall notify the administrator of a qualifying event within 30 days of the date of the qualifying event and the administrator shall then notify any qualified beneficiary of such event and his continued rights within 14 days of the date on which the administrator is notified of the qualifying event. 29 U.S.C. §§ 1166(a)(2) and (c).

*see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980).

Furthermore, the adequacy of the non-moving parties' opposition to a motion for summary judgment shall be determined by whether based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252, 106 S.Ct. 2505.

## IV. *Discussion*

### A. COBRA Notice/ERISA Claim.

Under COBRA's provisions, an employer has 30 days in which to notify an ERISA-qualified plan administrator of any qualifying event, such as a covered employee's termination, and the administrator, in turn, has 14 days in which to notify the employee of his rights under ERISA as a plan beneficiary. 29 U.S.C. § 1166(a)(2), (4) and (c). Because Royal Crest was both Mr. Anderson's employer and the administrator of the subject plan, the Andersons contend Royal Crest was required to provide Mr. Anderson with notice of his rights and benefits under the plan within 14 days of his termination and violated COBRA's notification requirements by waiting 26 days to notify him. Royal Crest contends it should not be deemed both employer and plan administrator under the circumstances of this case,[4] but asserts a 44 day notice require-

ment applies in any event under *Roberts v. National Health Corp.*, 963 F.Supp. 512 (D.S.C.1997).

The law, as I see it, is somewhat unsettled on this issue and I am unwilling, at this stage of the proceedings, * * the issue of applicable notice and maintains in its Motion for Summary Judgment on the Andersons' ERISA/COBRA claim that it complied with the COBRA notice requirements by providing notification to the Andersons within 26 days of Mr. Anderson's discharge from the company, well within the 44 day limit prescribed under COBRA. In their brief, the Andersons initially contend that the applicable time period for notification was 14 days, since Royal Crest was acting as employer and plan administrator. However, by the end of the discussion section in their brief, the Andersons recognize that "an employer administrator meets the requirements of COBRA by giving notice of continuance within 44 days of a qualifying event." (Am. Br. Opp'n Def.'s Mot. Partial Summ. J. (ERISA) at 7.) Thus, although there is some dispute as to whether Royal Crest was the employer and plan administrator or whether CCS, the off-site service provider with which Royal Crest contracted, was actually the plan administrator, it appears the Andersons have conceded the notice issue.

 After conceding this point, the Andersons argue that Royal Crest acted in bad faith, and thus the notification period should be 14 days rather than 44 days. The Andersons allege Royal Crest failed to take any steps in order to expedite the notification process, despite having knowledge that Mrs. Anderson suffered from

---

4. Royal Crest contends CSS became the "de facto" administrator of Royal Crest's plan pursuant to its agreement to "act and assist" it in handling its duties and responsibilities under 29 U.S.C. § 1161 "and to accomplish

and perform those notifications on behalf of [Royal Crest]." Am. Mem. Br. In Opposition to Def.'s Mot. Partial Summ. J. (ERISA), p. 3, and Ex. 12 "Contract for Compliance with COBRA."

multiple sclerosis and depended on her husband's health insurance. The Andersons assert Royal Crest's inaction amounts to bad faith. However, the Andersons fail to recognize that the notification requirements imposed by ERISA do not contain an ill will or bad faith element.

The Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161, *et seq.* requires that an employer provide an employee an opportunity to elect continuation coverage following a qualified event. The term "qualifying event" includes any of the following events which, but for the continuation coverage required under COBRA, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee.

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3) The divorce or legal separation of the covered employee from the employee's spouse.

(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act 42 USCS §§ 1395 et seq.

(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6) A proceeding in a case under title 11, United States Code, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163.

Under section 606(a)(2) of ERISA, an employer must notify the plan administrator of a qualifying event within 30 days of the date of the event. 29 U.S.C. § 1166(a)(2). After receiving notification, the administrator then has 14 days to notify the covered employee and any qualified beneficiaries of their option to continue coverage under the same terms of the employer's health plan. 29 U.S.C. § 1166(c). Notification to the spouse of the covered employee is treated as notification to all other qualified beneficiaries. *Id.* In most circumstances the period of coverage shall last at least 18 months from the date of the qualifying event. 29 U.S.C. § 1162(2)(A)(i). In the event there are multiple qualifying events, coverage shall last at least 36 months from the date of the initial qualifying event. 29 U.S.C. § 1162(2)(A)(ii). The premium the covered employee is required to pay during the continuation coverage period may not exceed 102% of the applicable premium. 29 U.S.C. § 1162(3)(A).

The notification provisions contained in section 606(a)(2) of ERISA do not clearly specify the time period an employer, who is also the plan administrator, has to notify the covered employee and beneficiaries of their right to continued coverage. Furthermore, the case law the parties cite to in their briefs reflects that jurisdictions have disagreed as to the interpretation of the ERISA notification provisions. *See, e.g., Roberts v. Nat'l Health Corp.,* 963 F.Supp. 512, 515 (D.S.C.1997) (forty-four days); *DiSabatino v. DiSabatino Bros. Inc.,* 894 F.Supp. 810, 817 (D.Del.1995) (forty-four days); *Burgess v. Adams Tool Eng'g, Inc.,* 908 F.Supp. 473, 478 (W.D.Mich.1995) (fourteen days); *Brown v. Neely Truck Line, Inc.,* 884 F.Supp. 1534 (M.D.Ala.1995) (fourteen days). However, the Department of Labor addressed this issue in a letter dated April 11, 1995 addressed to Pieter J. Doerr, President and Chief Operating Officer of CCS and concluded that an employer who is also the plan administrator shall have 44 days to notify a qualified employee and beneficiary. *See also Roberts v. National Health Corp.,* 963 F.Supp. 512 (D.S.C. 1997) (citing the Department of Labor let-

ter addressed to Pieter Doerr and holding the interpretation of the Department of Labor is reasonable). The Department of Labor reasoned that "the fact that the employer and plan administrator are the same does not obviate the need for the first [30–day] notice period [and] the knowledge that a qualifying event has occurred must often be transmitted from those within an employer with responsibility for employment records to those with responsibility for the plan." (Letter from Susan G. Lahne, Acting Chief, Division of Coverage, Department of Labor, to Pieter J. Doerr, President and Chief Operating Officer, COBRA Compliance Systems, Inc. (April 11, 1995)).

Thus contrary to the Andersons argument, the notification requirements imposed by section 606(a)(2) of ERISA do not contain a bad faith element, nor does the Department of Labor's interpretation of this provision contain such an element. It is undisputed that in the present case, the qualifying event was the termination of Mr. Anderson from Royal Crest on February 28, 2001. (Stipulated Scheduling Order, Undisputed Facts, at ¶ 8.) On March 13, 2001, Keith Gaertner, Royal Crest's Human Resources Manager, notified CCS that Mr. Anderson had been terminated. CCS sent the Andersons Notification of COBRA Continuation Coverage dated March 26, 2001. The Andersons received the notice on March 30, 2001, 26 days after the date of termination. As the Andersons acknowledge in their brief, as the employer and plan administrator Royal Crest had 44 days to provide notice of continued coverage and satisfied this requirement by providing notice to the Andersons within 26 days after Mr. Anderson was terminated from Royal Crest.

## B. Wrongful Termination Claim

■ Royal Crest contends it is entitled to Summary Judgment on the Andersons' wrongful discharge claim because the Andersons have raised no genuine issues of material fact that Mr. Anderson was terminated for having been injured on the job and filing a workers' compensation claim. In a separate Motion to Dismiss, Royal Crest asserts being terminated for hiring an attorney is not a cognizable claim for wrongful termination in Colorado, and thus should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its Motion to Dismiss Defendant asks the court to strike Paragraph 32 of the Plaintiffs' Complaint, specifically the reference to the Plaintiffs' having hired an attorney, and exclude at trial any evidence of the Plaintiffs' retaining a workers' compensation attorney or discussion of that fact with Defendant representatives pursuant to F.R.E. 401 and 403. Contrary to Defendant's claim that the Plaintiffs' attempts to divert the Court's attention to some minimized request of relief by the defendant is "a red herring," the Plaintiffs' appropriately point out such request for relief is improper under Rule 12(b)(6).

Plaintiffs also assert Defendant's Motion to Dismiss should be stricken as untimely since Defendant submitted its motion after filing its answer. Defendant argues it Motion to Dismiss was properly submitted since it reserved as an affirmative defense that Plaintiff failed to state a claim upon which relief can be granted. Since Defendant sets forth the exact same argument in its Motion to Dismiss as it does in its Motion for Partial Summary Judgment, specifically that termination for hiring an attorney is not a cognizable claim for public policy wrongful discharge and asks the Court to review its Motion for Partial Summary Judgment and Motion to Dismiss together, I will consider this argument in my response to Defendant's Motion for Summary Judgment. Thus, Defendant's Motion to Dismiss shall be denied as moot.

■ The Andersons assert Mr. Anderson was terminated by Royal Crest for being injured on the job, filing a workers' compensation claim, and hiring a workers' compensation attorney. Royal Crest contends Mr. Anderson was terminated because he did not report for modified duty work after being released to do so and refusing to perform any act directed by Royal Crest. Royal Crest asserts it did not direct Mr. Anderson to perform an illegal act, or prohibit him from performing a public duty or exercising an important job-related right or privilege, and thus the public policy exception does not apply. Thus, the issue is what was the reason for Mr. Anderson's termination from Royal Crest.

■ Since 1876, Colorado has recognized an employee who is hired for an indefinite period is an at-will employee and as such may be terminated without cause and without notice by either party to the employment, and whose termination does not give rise to a cause of action. *Kansas Pac. Ry. Co. v. Roberson*, 3 Colo. 142 (1876), *see also Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987). However, Colorado has also carved out a public policy exception to the at-will employment doctrine. To assert a claim for wrongful discharge under the public policy exception an at-will employee must show:

(1) that the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege;

(2) that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker;

(3) that the employee was terminated as the result of refusing to perform the act directed by the employer; and

(4) that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Martin Marietta, Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo.1992).

Royal Crest argues the act of retaining an attorney is not a specific right or duty that is protected under Colorado's public policy exception to the at-will employment doctrine and cites to *Armani v. Maxim Healthcare Services, Inc.*, 53 F.Supp.2d 1120 (D.Colo.1999) in support of its contention. In *Armani* the court granted the defendant's motion for summary judgment and held the public policy exception is not available where the applicable statute (FLSA) provides the employee with a remedy for retaliation. 53 F.Supp.2d at 1132. The court also ruled that the mere hiring of an attorney is a not a public policy right sufficient for a wrongful discharge claim. *Id.* However, *Armani* is distinguishable in that Mr. Armani resigned from his employment and based his public policy wrongful discharge claim on the allegation that he was constructively discharged for hiring an attorney. The Andersons' claim for wrongful discharge is not predicated solely on them having hired an attorney, but rather is based on Mr. Anderson being injured on the job, filing a workers' compensation claim, and hiring a workers' compensation attorney. Royal Crest mis-

takenly parsed the Andersons' argument by focusing on the allegation that Mr. Anderson was terminated for hiring an attorney. Thus, Royal Crest's reliance on *Armani* is misplaced, since the Andersons' public policy wrongful termination claim is based on more than the "mere hiring of an attorney."

Essentially the Andersons' argument is that Royal Crest terminated Mr. Anderson in retaliation for Mr. Anderson being injured on the job, pursuing a workers' compensation claim, and hiring an attorney. Thus, the issue becomes whether there exists a genuine issue of material fact as to Royal Crest's motive in its decision to terminate Mr. Anderson.

Colorado courts have explicitly acknowledged a claim by an employee for public policy wrongful discharge if the employee is discharged in retaliation for pursuing a workmen's compensation claim. *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo. App.1989) (stating permitting an employer to discharge an employee in retaliation for the employee pursuing a workmen's compensation claim would allow employers to discourage or prevent employees from seeking the benefits due them under the Workers' Compensation Act, § 8–4–101, *et seq.* and undermine the fundamental purposes of the workmen's compensation system). The Colorado Supreme Court has also recognized that an employee is granted the specific right to apply for and receive compensation under the Workers' Compensation Act and an employee who is terminated for exercising this right may state a cognizable claim for wrongful discharge in violation of public policy. *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540, 552 (Colo.1997); *see also Miedema v. Browning–Ferris Industries of Colo.,* 716 F.Supp. 1369 (D.Colo. 1989).

The evidence shows that Mr. Anderson severely injured his back while performing his duties as a route delivery driver for Royal Crest on November 1, 2000. Mr. Anderson immediately notified Asa Ratliff, Risk Manager for Royal Crest, of his injury and completed an injury report. Later in the day on November 1, 2000, Mr. Anderson received medical treatment for his injuries from Royal Crest's workers' compensation doctor. On November 15, 2000, Liberty Mutual, the workers' compensation insurance carrier, admitted liability and Mr. Anderson began receiving benefits at the rate of $410.00 per week. In early January 2001, Mr. Anderson attempted light duty work, however, he continued to experience lower back pain and was removed from light duty work for approximately one week. Mr. Anderson never returned to work at Royal Crest and has not reached maximum medical improvement.

On February 16, 2001, Mr. Anderson retained workers' compensation attorney, Peter H. McGuire. On February 20, 2001 McGuire entered his appearance with the Division of Workers' Compensation and wrote to Royal Crest and requested documentation concerning Mr. Anderson's employment. On February 22, 2002, Ratliff, notified the claims adjuster for Liberty Mutual that Mr. Anderson had retained an attorney. On February 23, 2001, Ratliff telephoned Mr. Anderson and advised him that he was going to be terminated. Ratliff expressed to Mr. Anderson that he had hurt his feelings and that he was angry that Mr. Anderson had retained an attorney. Ratliff further told Mr. Anderson that he was wasting his money on an attorney. In a letter dated February 28, 2001, Mr. Anderson was terminated from his employment with Royal Crest. In the February 28, 2001 termination letter, Ratliff requested Mr. Anderson pay $776.34 to Royal Crest for insurance and dental coverage for the months of December of 2000 and January and February of 2001. Royal

Crest also cancelled the Andersons' health insurance coverage on the date of his termination. On March 30, 2001, the Andersons received a Notice of Continuing Coverage from CCS. The Andersons elected coverage and their insurance coverage was reinstated on April 4, 2001 and made retroactive to February 28, 2001.

Construing the pleadings and evidence together with the affidavits and portions of the depositions provided to the Court in favor of the Andersons, a genuine issue of material fact exists as to the whether Royal Crest terminated Mr. Anderson in retaliation for him having been injured on the job, filing a workers' compensation claim, and hiring an attorney. The purpose of the public policy exception to the at-will employment doctrine is to prohibit an employer from discharging an employee for reasons contrary to widely accepted public policies. *Crawford Rehabilitation,* 938 P.2d at 552. The Workers' Compensation Act, C.R.S. § 8–40–101, et seq. is designed to provide an employee who is injured in the scope of his employment, medical treatment and compensation for the temporary and permanent loss of income as a result of the employee's temporary or permanent disability. *Lathrop,* 770 P.2d at 1372. Naturally, an employee is prohibited from exercising his protected right to pursue a workers' compensation claim, if he is discharged for exercising such right.

Whether Royal Crest possessed a retaliatory motive in its decision to terminate Mr. Anderson is an issue to be determined by the fact finder. Thus, Royal Crest's Motion for Summary Judgment shall be denied.

## IV. *Conclusion*

The Andersons' first claim for relief alleging Royal Crest failed to provide them proper notice of continuing health insurance coverage in violation of ERISA, 29 U.S.C. § 1132 and COBRA, 29 U.S.C. §§ 1161–1168 shall be dismissed on summary judgment, since there is no genuine issue of material fact that Royal Crest as the employer and plan administrator timely provided notice to the Andersons within 26 days of the qualifying event.

The Andersons' second claim for wrongful discharge should not be dismissed on summary judgment because reasonable persons could disagree about the reason for Mr. Anderson's termination from employment with Royal Crest. Furthermore, for the reasons set forth above, Royal Crest's Motion to Dismiss Plaintiffs' claim for wrongful discharge shall be denied as moot.